7735

### CALDWELL v. DUNCAN.

1. EVIDENCE—PAROL.—In an action on a contract to save a party harmless from any claim or demand another has against him for procuring options on land, the number of acres included in the option may be proved by parol.

2. IBID.—THE RECORD of an action against the party indemnified by the party indemnified against is competent in an action against the indemnifier by the indemnified because: 1. The witness who proved the record testified before it was offered what each paper in the record was without objection. 2. No ground of objection was stated. 3. It was competent to show that the indemnified had been sued by the party indemnified against.

3. SUPPLEMENTAL CHARGE to the jury held not to have coerced the jury into a verdict.

4. INSTRUCTION that juror should take as part of the facts in the case the opinion of a fellow juror, *held* to mean with its connections no more than a juror should give due consideration to the opinion of a fellow juror.

5. CHARGE that the parties to the suit had said in black and white that another had some interest in the matter under the proof, if error, is harmless.

6. IBID.—ISSUES—FRAUD—WAIVER.—Instruction that a party does not deny the contract, and that covers all conversations and transactions had before its execution, does not take away from the jury all issues of fraud set up in the answer, besides there was no evidence to sustain such issue. Proof of a mere violation of contract will not support an allegation of fraud, and breach of contract is waived by subsequently making another.

Before GAGE, J., Barnwell.    Affirmed.

Action by Howard Caldwell against W. J. Duncan, W. H. Duncan, J. A. Koozer, L. W. Hill and H. C. Hay. From judgment for plaintiff, defendants appeal.

*Mr. J. A. Willis,* for appellants, cites: *Options were the best evidence of the number of acres included therein:* 75 S. C. 346; 60 S. C. 300. *It is error to attempt to coerce a jury into a verdict:* 156 N. Y. 271.

*Messrs. Harley & Best* and *Jas. E. Davis,* contra, cite: *It was not necessary to require the production of options:* 43 S. C. 370; 61 S. C. 292; 63 S. C. 78. *Charge construed as a whole does not tend to coerce verdict:* 86 S. C. 17; 74 S. C. 141.

December 6, 1910. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. The complaint alleges that the defendants purchased from plaintiff certain options, which he had secured on timber rights on Upper Three Runs, in Aiken and Barnwell counties, under a written contract, dated July 31, 1907, whereby they agreed to save the plaintiff harmless from any claims and demands which W. D. Black had against him for procuring said options; that

defendants knew, when they signed the contract, that Black had procured the options for plaintiff, and that plaintiff had agreed to pay him fifty cents an acre for his services; that after they had failed and refused to pay his claim, Black sued plaintiff therefor and attached his property, and plaintiff was compelled to pay him $950, in satisfaction of his claim. Plaintiff demanded judgment for $2,000 damages resulting from the breach of contract and the attachment proceedings. Defendants denied all the allegations of the complaint and set up an affirmative defense and a counterclaim for $5,000 damages, both of which arose out of the same facts alleged, which need not be repeated here, as they do not affect the questions presented in this appeal. The plaintiff recovered judgment for $950.

Plaintiff proved the contract alleged, and testified that he had delivered the options procured by Black to defendants, and introduced in evidence the attachment proceedings of Black against him, which showed that Black had sued him for $1,500 for procuring the options on three thousand acres of land; he also testified that he had paid Black $950 in compromise and settlement of his claim, and introduced Black's receipt therefor. Black testified that he procured options on about three thousand acres, which he turned over to plaintiff; that he made demand on defendants for his claim, which was refused; that he then brought action against plaintiff for $1,500 for his services in procuring the options, and attached his property; that plaintiff paid him $950 in compromise and settlement of his claim; that, on the day the contract between plaintiff and defendants was made, the defendant W. J. Duncan asked him what his claim was, and he told him it was over $1,000; that said defendant offered him $200 in settlement thereof, which he refused. The defendant W. J. Duncan, who negotiated the transactions with plaintiff, testified that plaintiff and defendants were interested in procuring the options, and defendants agreed with plaintiff that he should employ Black to secure

them, and pay him fifty cents an acre for his services; that defendants, having contracted to sell the options to Montague & Baker, made demand on plaintiff for them; that plaintiff refused to deliver them, unless defendants would pay him $1,332.50 and agree to pay Black's claim for procuring them; that, after wrangling two or three days, they agreed to his demands, in order to consummate their contract with Montague & Baker, and therefore entered into the agreement sued on; that he knew, before signing it, that something was due to Black for procuring the options,— thought he had procured options on about 1,100 acres,—and offered him $200, which he refused.

The foregoing statement of the substance of the evidence shows there was no error in refusing the motions of defendants for a nonsuit and for the direction of the verdict, which can be granted only when there is no evidence to sustain the material allegations of the complaint.

Defendants contended that it was necessary for plaintiff to prove the number of acres upon which Black had procured options in order to determine the amount of his liability to Black and of defendants' liability over to plaintiff, and that the option contracts were the best evidence as to the number of acres thereby secured, and objected to any other evidence as to the number of acres secured. This objection was properly overruled. The number of acres covered by the options was an independent fact, provable by any competent testimony outside of the options. This was not an attempt to prove the contents of a written instrument by parol. Such contracts usually describe the acreage as so many acres, more or less. But it is not necessary to their validity that the acreage be stated at all. A contract giving an option to buy the timber on a certain tract of land properly described would be valid without stating the number of acres therein contained. Therefore the admission of parol evidence to prove the number

of acres actually contained in a tract of land does not violate the rule that the best evidence to prove the facts in issue must be produced. Here the writing was only collateral to the fact in issue. The objection of defendants 2 to the record in the suit of Black against the plaintiff was also correctly overruled for several reasons. *First.* The witness who proved the record was allowed to testify, without objection, what each paper in the record was before any of them were offered in evidence. *Second.* When the record was offered and received in evidence, no ground of objection was stated. *Third.* The record was competent and relevant evidence to prove the fact that plaintiff had been sued by Black for his services. 1 Cr. Ev., Secs. 527, 538.

The remaining exceptions are to certain parts of a supplemental charge which the Judge delivered to the jury after they had the case under consideration from the afternoon of one day till about noon of the next day. So much of that charge as bears upon the questions presented by the exceptions was as follows: "You should agree. Let me tell you this: I have been holding Court since the middle of September, four weeks at Aiken, two weeks at Hampton and two weeks at Bamberg, and have been here two weeks; and haven't had a mistrial. This is the tenth week, and we have tried all sorts of cases and there is no reason why you should not get together and come to a verdict in this case, if you desire to do right. If there is a fire burning in the wilderness and you twelve men see it and want to get to it, there is no reason why you cannot get to it. If one of two or three fellows shut their eyes and start in another direction, they will never get to it. When a man goes on a jury, he has got nobody to serve but the truth; he ought to be absolutely blind to every other appeal. He ought not to set his head in stubbornness against his fellows. I heard a Judge tell a jury this one time: That a juror should

take as part of the facts of a case the opinion of the man who sits next to him. Listen to that opinion, and if it is good, hear it; take what truth there is in it. Now, there are practically only two matters in this case. It is my duty to tell you what this contract means, and it is your business to take what I say * * * Now, there is no question about what the Duncans agreed to do. They said in black and white that Black has some interest in this matter, and if Black has a claim and comes on Caldwell for it, we will hold Caldwell harmless. The only question is, how much has Caldwell had to pay out on that account? And that is a question of fact for you. How much has he had to pay,—one dollar, or nine hundred, or nine hundred and fifty * * * What is Duncan's claim? He does not deny that contract, and I tell you that contract covered all that was done before,—all the conversations and all the transactions which happened before the 31st day of July. Now, that is plain. Now, what does Duncan claim? He claims that Caldwell deceived him; that Caldwell had a wicked heart; that he deceived him; said things that were not so; and said them to damage him; and by that he is damaged about five thousand dollars. Is there any testimony to show that? He says so, and he must prove it by the preponderance of the testimony. If there is no testimony, you disregard it,—if there is testimony, you regard it. Now, that is all that there is in the case; I am going to ask you gentlemen to retire and find a verdict in this case. Mr. Willis: I ask that you charge the jury what the Duncans are responsible for; that they are not responsible for what Caldwell paid Black, but only responsible for what Black could have recovered from Duncan. The Court: Yes, sir; I told them that. That is as plain as my finger."

Appellants contend that the effect of the first part of the supplemental charge was to coerce the jury into finding a verdict. We see nothing in the language of the Judge which

could have that effect.    In *Dover* v. *Lockhart Mills,* 86 S. C. 229, 236, this Court said: "It is the duty of the trial Judge to admonish juries of the desirability and importance of trying to reconcile their differences and agree upon a verdict, and, in the exercise of the discretion vested in him, to keep them together for such reasonable time as may seem necessary and proper to that end.    He is in the atmosphere of the trial, and is cognizant of all the facts and circumstances developed during the trial; and, therefore, the length of time which should be given to the consideration of the case by the jury must be left to his sound discretion.    This Court will not interfere with the exercise of that discretion, unless it is clearly made to appear that it has been abused."

The next assignment of error is in charging as follows: "I heard a Judge tell a jury this one time: That a juror should take as a part of the facts in the case the opinion of the man sitting next to him.    Listen to that opinion, and, if it is good, hear it; take what truth there is in it."    Appellants contend that it was error to charge that a juror should take the opinion of a fellow juror as a fact in the case.    Of course, a juror should not take the opinion of a fellow juror as a fact in the case, but the language used was intended to convey, and we think, taken in connection with the whole charge on that subject, it did no more than convey the idea that a juror should give due consideration to the opinion of a fellow juror, and weigh it as he would the evidence to prove a fact in issue.    "Listen to that opinion, and, if it is good, hear it,—take what truth there is in it;" for, as the Judge said, a juror "ought not to set his head against his fellows in stubbornness."    The bare possibility of a misunderstanding by the jury of the idea which the Judge intended to convey is not sufficient to show that defendants were prejudiced.

The next assignment of error is in charging as follows: "Now, there is no question about what the Duncans agreed

22—87

to do. They said in black and white that Black has some interest in this matter, and if Black has a claim and comes on Caldwell for it, we will hold Caldwell harmless. The only question is: How much has Caldwell had to pay on that account? And that is a question of fact for you." It is contended that in saying that the Duncans "said in black and white that Black had some interest in this matter" the Judge charged upon the facts. We do not think so. A reasonable construction of the language of the contract is that it is an admission by all parties to it that Black had some claim for procuring the options. But even if this construction be wrong, and the parties meant, by the language used, not to admit that Black had any valid claim, but merely to provide for any possible claim by him, still the error was harmless, because the undisputed evidence is that defendants knew when they entered into the contract that he had a claim, and recognized it by offering to pay him $200 in settlement of it. It is further contended that said instruction took away from the jury the question whether Black had obtained any options, and, if so, upon how many acres. Both those questions were involved in the question: "How much has Caldwell had to pay on that account?" And that question was left to the jury.

The next assignment of error is in the following charge: "What is Duncan's claim? He does not deny that contract, and I tell you that contract covers all that was done before,—all the conversations and all the transactions which happened before the 31st day of July. Now, that is plain." The error alleged is that the Judge thereby took away from the jury the consideration of all the testimony as to the fraud practiced by plaintiff on defendants by withholding the options from them in violation of the previous contracts between them. The language quoted by appellant in this exception is only a part of what the Judge said in the same connection, as will be seen by

reference to the charge hereinbefore more fully quoted, where it appears that the alleged fraud of plaintiff was submitted to the jury. But there would have been no error if that issue had been withdrawn from the jury, for there was not a tittle of testimony to sustain it. There was no evidence whatever of any deception or misrepresentation under which the contract was entered into. It will be seen by reference to the answer and to the exception above that the fraud alleged is in withholding the options from defendants until they complied with plaintiff's demands, in violation of a previous contract between them. It is needless to say that proof of the mere violation of a contract will not support an allegation of fraud. Even if Caldwell was violating a previous contract in refusing to give up the options, until his demands were complied with, the defendants waived it when they entered into the contract of July 31, 1907.

Last, it is alleged that the Judge erred when requested by defendants' counsel to charge that defendants were not responsible for what Caldwell paid Black, but only for what Black could have recovered of them, in saying: "I told them that;" the error being that he had not so told them; which is untenable, because if he had not told them so before, he did tell them so then. When he said: "I told them that," the jury was bound to understand that he sanctioned and charged the request of defendant's counsel. But the charge shows that he had instructed the jury that plaintiff could recover only what he had to pay Black on account of procuring the options.

Judgment affirmed.

MR. JUSTICE WOODS. *I concur except that I do not think the written contract was an acknowledgment that the plaintiff had any valid claim.*